**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:26-cr-00074-MTS-PLC |
| | ) | |
| MICHAEL W. MOHR, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF AN ORDER PERMITTING RELIGIOUS ACCOMMODATION (RECEIPT OF HOLY COMMUNION)**

COMES NOW Defendant Michael W. Mohr, by and through his counsel John C. Schleiffarth, and respectfully moves the Court for an order permitting him to receive the sacrament of Holy Communion, including the consecrated wine, from a Lutheran pastor on a weekly basis, subject to whatever inspection and security conditions his custodians reasonably require. Defendant is a pretrial detainee in the custody of the United States Marshals Service ("USMS"), housed at the Ste. Genevieve County Jail (the "Jail") under an intergovernmental agreement with the United States.

Defendant requests the following relief, in the order stated:

(1) An order directing the United States, through the USMS, either to secure the requested accommodation from the Jail under the parties' intergovernmental agreement or to redesignate Defendant to a facility that will provide it;

(2) in the alternative, an order directing the Jail and its officials to permit the accommodation;

(3) in the further alternative, leave to join the Sheriff of Ste. Genevieve County and the Jail Administrator, Lt. Andrew Johnson, in their official capacities, for the limited purpose of this motion, or to file a companion civil action, so that complete relief may be afforded; and

(4) a hearing, at which Defendant will be present with his pastor.

Defendant has pursued every remedy available to him. The Jail denies him the sacrament of Holy Communion, which, as a practicing Lutheran and a former Lutheran pastor, is the central and essential act of his religious devotion. It denies him that sacrament for a single reason: a blanket rule against outside food and drink, and in particular against wine. Holy Communion lies at the center of Lutheran worship. A pastor blesses a small wafer and a sip of wine, and the communicant receives them as the true body and blood of Christ, given and shed for the forgiveness of sins. For Defendant, as for Lutherans generally, the sacrament is not a symbol that stands in for worship; it is the act of worship itself. The rule at issue does not regulate Defendant's faith at the margins. It forecloses the central act of his worship altogether.

The Religious Land Use and Institutionalized Persons Act forbids that result unless the government proves its refusal is the least restrictive means of serving a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The Religious Freedom Restoration Act imposes the identical burden on the United States and its agencies. Id. § 2000bb-1. Neither burden can be carried here. If the Federal Government could not justify categorically barring a religious community's sacramental ingestion of a Schedule I hallucinogen, *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 423, 439 (2006), no government can show a compelling interest in forbidding a communion wafer and a sip of wine. The Bureau of Prisons operates the largest correctional system in the United States and permits inmates to receive sacramental wine by

written policy, under a published security protocol, and provides Communion even to inmates in special housing. BOP Program Statement 5360.10 §§ 3(b), 6(a)(1) (Oct. 24, 2022) (Ex. C), a published agency policy of which the Court may take judicial notice. See Fed. R. Evid. 201(b). A categorical ban therefore cannot be the least restrictive means of furthering any interest at all. See *Holt v. Hobbs*, 574 U.S. 352, 369 (2015); *Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 751 52 (8th Cir. 2014). The motion should be granted.

**BACKGROUND**

Defendant is awaiting trial on the charges in this case. He has not been convicted, and he is presumed innocent.

Defendant is a practicing Lutheran and a former Lutheran pastor. He served as a pastor in the Lutheran Church for more than twenty-seven years. Before his detention he attended worship and received Holy Communion at least once each week, and often more frequently. Ex. A, Declaration of Michael W. Mohr, ¶¶ 3, 6. Holy Communion, also called the Lord's Supper or the Sacrament of the Altar, stands at the center of Lutheran worship, and for a Lutheran believer there is no substitute for receiving it. Ex. B, Declaration of Pastor Frederic W. Baue, ¶ 3.

The sacrament requires actual physical elements, bread and wine, and Lutheran practice requires wine. Grape juice is not wine, and it does not substitute for wine in the sacrament. Ex. B ¶ 3. The quantities are very small: one small wafer and a sip of wine, well under a tablespoon, in a small thimble-sized cup that the communicant drinks. The elements can be supplied in pre-packaged, sealed, single-serving Communion kits that are widely available and can be inspected before administration. Ex. B ¶ 4. Defendant sincerely believes that in Holy Communion he receives the true body and blood of Christ given to him with the bread and wine, Ex. A ¶ 5, and that the wine is required; grape juice, or wine with the alcohol removed, would not allow him to

receive the sacrament as he believes it must be received, Ex. A ¶ 8. What he has asked for is a small wafer of bread and a small, thimble-sized cup of wine, brought and administered by his pastor. Ex. A ¶ 10. Defendant has been detained since January 28, 2026, and has not been able to receive Holy Communion at any time since. Ex. A ¶ 7.

The USMS houses Defendant at the Jail under an intergovernmental agreement. On information and belief, the Jail receives federal funds in connection with the detention of federal prisoners, including per-diem payments authorized by 18 U.S.C. § 4013(a)(3), and participates in other federal assistance programs. Defendant has no access to the Jail's contracts or funding records. The sources and terms of that assistance are within the Jail's knowledge and can be confirmed at a hearing if the Court considers the question material.

Undersigned counsel represents the following communications with Jail staff and with the USMS as an officer of the Court. On June 11, 2026, after a series of telephone calls from counsel and direct requests by Defendant, counsel spoke with a Jail lieutenant to inquire about a reasonable religious accommodation. He proposed that the Jail permit a Lutheran pastor to bring Defendant Holy Communion under any inspection and supervision protocol the Jail required. The Lieutenant, though professional, responded that the Jail would make a religious accommodation only upon an order from this Court, citing the Jail's policy against outside food and drink. The Jail identified no concern specific to Defendant and no concern specific to sacramental Communion.

On or about July 24, 2026, counsel spoke with Major Schott of the Jail, who explained that the Jail would be willing to make some accommodation but would not permit a thimble-sized cup of wine absent a court order. He suggested that grape juice might suffice. It does not. What Defendant seeks, and what his church administers, is the sacrament with bread and wine,

and grape juice does not substitute for wine in the sacrament. Ex. A ¶¶ 5, 8; Ex. B ¶ 3. The Jail's position is that it will permit no wine to be consumed in any quantity, however small.

The Jail permits other outside contact and materials under inspection, including pastoral visits. Pastor Baue visits Defendant on a weekly basis. Ex. A ¶ 3. He is willing and able to bring Holy Communion to Defendant at the Jail each week, under whatever reasonable conditions the Jail requires. Ex. B ¶ 5. Defendant, for his part, agrees that the bread and wine may come in a sealed, pre-packaged, single-serving Communion kit; that Jail staff may inspect the elements before they are given to him; that his pastor may be screened through the Jail's ordinary clergy or visitor approval process; that the Jail may choose the time and place; that he will receive the wafer and drink the wine, in his pastor's presence, keeping no part of the elements; and that his pastor will take the cup and all packaging with him when he leaves. Ex. A ¶ 10.

Defendant submitted a formal administrative request to the Jail on March 31, 2026, asking to receive Holy Communion. Ex. A ¶ 9. The Jail denied the request, citing its policy against outside food and drink, id., but has never provided a formal written response to it, effectively denying Defendant his First Amendment right to the free exercise of religion. In speaking with Defendant's counsel, the Jail has advised that it would permit receipt of Holy Communion only if it receives an order from this Court. Id. The Jail has had more than ample time to provide a formal written response and has failed to do so. No administrative remedy is available to grant the relief he seeks. Counsel separately asked the USMS to address the matter; the USMS responded that it will not interfere with the Jail's policy absent a court order. No exhaustion requirement applies to this motion in any event: the Prison Litigation Reform Act's exhaustion provision governs an "action . . . with respect to prison conditions," 42 U.S.C. § 1997e(a); cf. 18 U.S.C. § 3626(g)(2) (defining "civil action with respect to prison conditions" as

"any civil proceeding" concerning conditions of confinement), and this is a motion in a criminal proceeding. Were that provision applicable, the Jail's refusal to act absent a court order, and its failure to provide any written response, have rendered its process unavailable. See *Ross v. Blake*, 578 U.S. 632, 643 (2016) (remedy is unavailable where officials are "unable or consistently unwilling to provide any relief"); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (prison's failure to respond to inmate's informal resolution request left no further administrative remedy "available").

**LEGAL STANDARD**

RLUIPA provides that no government may "impose a substantial burden on the religious exercise of a person residing in or confined to an institution," even through a rule of general application, unless the government demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The Act reaches any program or activity receiving federal financial assistance and any program or activity in which the burden affects commerce, id. § 2000cc-1(b)(1)–(2), and defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," id. § 2000cc-5(7)(A). "Institution" carries the meaning given in 42 U.S.C. § 1997, which includes a jail. The Eighth Circuit has confirmed that a county is a "government" within RLUIPA's reach and that the Act "specifically extends its protection to jail inmates." *Barnett v. Short*, 129 F.4th 534, 539–40 (8th Cir. 2025) (citing 42 U.S.C. §§ 2000cc-1(a), 1997(1)(B)(ii), 2000cc-5(4)(A)(i)).

The claimant bears the initial burden of showing that a sincere religious exercise is subject to a substantial burden; the burden then shifts to the government to satisfy strict scrutiny.

42 U.S.C. § 2000cc-2(b); *Holt v. Hobbs*, 574 U.S. 352, 362 (2015); *Ramirez v. Collier*, 595 U.S. 411, 425 (2022). RLUIPA "aim[s] to ensure greater protection for religious exercise than is available under the First Amendment." *Ramirez*, 595 U.S. at 424 (quoting *Holt*, 574 U.S. at 357). RFRA imposes the same strict-scrutiny test on the United States and its agencies, instrumentalities, and officials. 42 U.S.C. §§ 2000bb-1(a)–(b), 2000bb-2(1); see *O Centro*, 546 U.S. at 424. The Supreme Court has identified "participating in sacramental use of bread and wine" as an example of the religious exercise these statutes protect. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990)).

## ARGUMENT

### I. The Court May Grant This Relief in This Proceeding, and RLUIPA and RFRA Supply the Controlling Standard.

#### A. Existing statutory authority authorizes Defendant to seek this relief in this proceeding.

RLUIPA provides that a person may "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). RFRA is identical in this respect. Id. § 2000bb-1(c); see *O Centro*, 546 U.S. at 424 (setting out RFRA's terms, including its authorization of "appropriate relief" in "a judicial proceeding"). This criminal case is a judicial proceeding; Defendant is before the Court as a pretrial detainee whose detention the Court ordered; and the United States, which directs and pays for that detention, is a party. Congress's chosen language does not confine RLUIPA and RFRA claims to freestanding civil actions. The Court's authority is reinforced by its responsibility for the detention it ordered, see 18 U.S.C. § 3142(i)(2)–(3) (detention order must

commit the defendant to the custody of the Attorney General for confinement and direct that he be afforded a reasonable opportunity for private consultation with counsel), and by its power to issue "all writs necessary or appropriate in aid of [its] jurisdiction[ ]," 28 U.S.C. § 1651(a). Should the Court conclude that the relief must be pursued in a separate civil action, Defendant requests leave to file a companion civil action and asks that it be heard on an expedited basis.

**B. RLUIPA reaches the Jail.**

RLUIPA applies to an institution that is a "program or activity receiving Federal financial assistance" or in which the burden on religious exercise "affects commerce." 42 U.S.C. § 2000cc-1(b)(1)–(2). Either predicate suffices. On information and belief, the Jail houses federal detainees under a USMS intergovernmental agreement and receives federal per-diem payments for doing so. 18 U.S.C. § 4013(a)(3). Defendant has no access to the Jail's funding records, and the question can be resolved at a hearing if the Court considers it material. The Eighth Circuit has declined to treat a failure to plead that predicate as a threshold obstacle where, liberally construed, the essence of a pro se detainee's RLUIPA claim was clear. *Barnett*, 129 F.4th at 539. The commerce predicate requires no such showing. The elements at issue, pre-packaged and commercially manufactured communion wafers and wine, move in interstate commerce, and removal of the burden would permit their delivery and use. In all events, the primary relief Defendant seeks runs against the United States under RFRA, which contains no funding or commerce predicate.

**C. RFRA reaches the United States, and the primary relief requested runs against a party.**

RFRA binds every "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." 42 U.S.C. § 2000bb-2(1). The USMS is

such an agency. It designated Defendant's place of confinement, it pays for that confinement, and it holds the contractual authority to obtain the accommodation from its contractor or to redesignate Defendant elsewhere. Because the United States is a party to this proceeding, an order directed to the Government requires no joinder and raises no question about the Court's authority over a non-party. Defendant therefore asks first for relief against the Government and only alternatively for an order directed to the Jail. Should the Court prefer to proceed against the Jail directly, Defendant does not object to the Court's directing a response from the Jail, the Sheriff, or the County, each of which is being served with this motion, and requests leave in the further alternative to join the Sheriff, who holds final authority over the operation of the jail, and the Jail Administrator, Lt. Andrew Johnson, who oversees its day-to-day operation, in their official capacities, or to file a companion civil action. See *Barnett*, 129 F.4th at 545 (looking to local law and holding, under a county ordinance, that the sheriff rather than the jail administrator held final policymaking authority over a Missouri county jail); Mo. Rev. Stat. § 221.020 (sheriff "shall have the custody, rule, keeping and charge of the jail"). Because Defendant seeks only prospective relief and no damages, joinder of these officials in their official capacities raises none of the concerns addressed in *Landor v. La. Dep't of Corr. & Pub. Safety*, No. 23-1197, slip op. at 8, 15 n.6 (U.S. June 23, 2026) (RLUIPA does not authorize personal-capacity claims against officials who have not consented to its funding conditions; an official-capacity suit is a suit against the official's office). The governing standard is the same on any path: substantial burden, then strict scrutiny.

## II. The Categorical Denial of Holy Communion Substantially Burdens Defendant's Sincere Religious Exercise.

A policy substantially burdens religious exercise when it forces an adherent to "engage in conduct that seriously violates [his] religious beliefs." *Holt*, 574 U.S. at 361 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014)). The rule at issue does not press on the margins of Defendant's faith; it makes the central sacrament of that faith impossible. The Eighth Circuit treats an outright ban on a religious practice as a substantial burden. In *Weber*, a complete prohibition on the ceremonial use of tobacco substantially burdened Lakota inmates' religious exercise, and the court refused to weigh the practice's relative importance, because "this type of inquiry into what is or is not central to a particular religion has no place in an RLUIPA analysis." 750 F.3d at 750. The denial here of the Eucharist itself, for which Lutheran practice recognizes no substitute, is a greater burden still. Applying the First Amendment standard, the Eighth Circuit has held that allegations that a Missouri county jail deprived a detainee of his Bible for a month stated a substantial, not a de minimis, burden. *Barnett*, 129 F.4th at 544. Here the deprivation is complete and has lasted the length of Defendant's detention, now more than eight months. Ex. A ¶ 7.

Sincerity, not theological importance, is the threshold question, and RLUIPA forecloses any inquiry into whether the Eucharist is "central" to or "compelled" by Lutheran doctrine. 42 U.S.C. § 2000cc-5(7)(A); *Holt*, 574 U.S. at 362. Defendant's declaration, corroborated by his pastor's, establishes a sincere and longstanding practice. Mohr is a former Lutheran pastor who communed at least weekly, and often more frequently, before his detention. Ex. A ¶¶ 3–6; see Ex. B ¶ 2 (pastor's judgment that Defendant's faith and his desire to receive Holy Communion are genuine and deeply held). The anticipated answer is perhaps that Defendant may still pray,

read Scripture, speak with a chaplain, and may be permitted to receive Communion at some later date under different circumstances. Defendant has explained that prayer, Scripture, and speaking with a chaplain, though meaningful to him, do not take the place of the sacrament. Ex. A ¶ 7. Such an answer does not cure the burden, because RLUIPA protects the specific exercise that has been burdened, not religion in the abstract. *Holt*, 574 U.S. at 361–62.

## III. Strict Scrutiny Cannot Be Satisfied.

Because the burden is substantial, the government must prove both a compelling interest and least restrictive means as applied to this Defendant and this accommodation. It cannot prove either.

### A. There is no compelling interest in barring a de minimis, pastor-administered sacrament.

Strict scrutiny under RLUIPA requires a "more focused" inquiry, directed "to the person" and to "the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363 (quoting *Hobby Lobby*, 573 U.S. at 726, in turn quoting *O Centro*, 546 U.S. at 430–31). A generalized interest in order, sanitation, or contraband control, asserted at the level of a blanket rule, does not discharge that burden. *Holt*, 574 U.S. at 363.

*O Centro* is instructive, because RLUIPA applies "the same standard as set forth in RFRA." 546 U.S. at 436. There, the Supreme Court affirmed a preliminary injunction barring the Federal Government from enforcing the Controlled Substances Act against a religious sect's sacramental ingestion of hoasca, a tea containing a Schedule I controlled substance, because the Government had not shown, at the preliminary-injunction stage, a compelling interest in barring the sect's sacramental use. Id. at 423, 437, 439. If the United States could not categorically forbid the sacramental use of a controlled hallucinogen, no government can articulate a

compelling interest in forbidding a wafer and a sip of wine well under a tablespoon, inspected by staff and administered by a vetted pastor. Nor is the asserted concern merely outweighed on these facts; it has never been articulated at all. The Jail identified no concern specific to Defendant and no concern specific to sacramental Communion, but only an internal rule.

The federal system has itself resolved the question. BOP's published policy states that inmate consumption of sacramental wine administered by a chaplain, religious contractor, or authorized volunteer "will not be considered consumption of alcohol or ingestion of an illegal substance." BOP P.S. 5360.10 § 3(b) (Ex. C). The policy treats that allowance as an express exception to its own ban on alcohol, listing "consumption of alcohol" among unauthorized practices "except as noted in 3b of this Program Statement, Religious Use of Wine." Id. § 3(d). These procedures govern detainees in Defendant's position: the Program Statement provides that they "apply to Pretrial, Holdover, and Detention Centers." Id. § 2. An interest that the largest correctional system in the Nation has formally declared inapplicable to this practice cannot be compelling for a county jail holding that system's detainees.

### B. A blanket ban is not the least restrictive means where the federal system accommodates the identical practice by written policy.

Even a compelling interest must be pursued through the least restrictive means, and the government bears the burden of proving that no lesser alternative would serve its ends. *Holt*, 574 U.S. at 364. "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." Id. at 365 (quoting *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815 (2000)). Where other institutions accommodate the same practice, a prison "must, at a minimum, offer persuasive reasons why it believes that it must take a different course." Id. at 369. The Eighth Circuit enforces that rule. In a later case brought by the same petitioner, *Holt v.*

*Payne*, the court vacated a judgment for prison officials and remanded because the district court had not addressed the inmates' proposed less-restrictive alternatives or asked whether the officials' reasons were persuasive in light of evidence that other prisons—including, as to one of the challenged policies, the Bureau of Prisons and nineteen state prisons—offered the accommodation. 85 F.4th 873, 878–79 (8th Cir. 2023) (per curiam). And in *Weber*, the court affirmed a determination that a total ban was not the least restrictive means where narrower measures were available. 750 F.3d at 751–52. The court also treated other correctional systems' allowance of the same practice as evidence that less restrictive means existed. Id. at 752.

The comparator evidence here is documentary, not anecdotal. BOP policy provides:

> Inmates may be permitted to receive small amounts of wine as part of a religious ritual only when administered under the supervision of Bureau Chaplains, religious contractors, or Chapel volunteers authorized by the Bureau to perform the ritual. Wine will be stored behind two locks and accounted for with bin cards. . . . The consumption of wine under these circumstances will not be considered consumption of alcohol or ingestion of an illegal substance. Inmates are not allowed to give wine to other inmates.

BOP P.S. 5360.10 § 3(b) (Ex. C). For scheduled services, chaplaincy staff provide the wine to the minister in a measured "two-ounce covered container," and the minister disposes of the container and any unused portion. Id. BOP provides Communion even to inmates in segregation: "Chaplains will provide opportunities for individuals to receive the sacraments, and sacred rituals while housed in SHU. This includes, but is not limited to, communion…" Id. § 6(a)(1); see also 28 C.F.R. §§ 548.10(a), 548.19 ("reasonable and equitable opportunities to pursue religious beliefs and practices"; pastoral visits). Nor is the federal accommodation discretionary or occasional. Every BOP institution must maintain an institution supplement setting out "[p]rocedures and limitations for storage and provision of religious wine." BOP P.S. 5360.10 § 1(c).

The Supreme Court has already drawn the inference that follows from BOP's experience. "For more than a decade, the federal Bureau of Prisons has managed the largest correctional system in the Nation under the same heightened scrutiny standard as RLUIPA without compromising prison security, public safety, or the constitutional rights of other prisoners." *Cutter*, 544 U.S. at 725 (quoting Brief for United States 24). The Jail must explain why it alone cannot do, for one detainee, what the federal system does by written policy across its institutions. It cannot, because the workable alternatives are obvious and narrow: administration by an approved pastor screened through ordinary visitor procedures; use of pre-packaged, sealed, single-serving Communion elements inspected before delivery; use of a single thimble-sized cup of wine, handed to Defendant by the pastor and consumed in his presence, see Ex. A ¶ 10; Ex. B ¶ 4; administration at a time and place the Jail designates; and removal of the cup and all packaging by the pastor. A sip of wine well under a tablespoon will not intoxicate Defendant.

The D.C. Circuit addressed this precise question under the far more deferential First Amendment standard and still required officials to justify themselves. In *Levitan v. Ashcroft*, Catholic federal prisoners challenged a BOP rule under which only "the staff or contract chaplain may consume small amounts of wine for performance of the ritual." 281 F.3d 1313, 1316 (D.C. Cir. 2002). The court reversed summary judgment for the officials, framed the question as "whether the ban on the chaplain's actually administering wine to the inmates, as opposed to merely drinking it in their presence, is justified," and directed that any interest in preventing drunkenness be measured against "the negligible amount of wine ingested through intinction." Id. at 1322 23. Two conclusions follow. First, a practice that must be justified even under *Turner* review cannot survive strict scrutiny unexamined. Second, BOP has since abandoned the chaplain-only rule that *Levitan* considered and now expressly authorizes inmates to receive

sacramental wine: over two decades of experience, the federal system moved toward accommodation, not away from it.

**C. The proposed substitutes do not address the burden.**

The Jail offered grape juice. The sacrament requires actual physical elements, bread and wine, and Lutheran practice requires wine. Ex. B ¶ 3. Defendant's pastor confirms that grape juice is not wine and does not substitute for wine in the sacrament. Id. Defendant sincerely believes that he receives the body and blood of Christ given with the bread and wine, Ex. A ¶ 5, and that the wine is required. Grape juice, or wine with the alcohol removed, would not allow him to receive the sacrament as he believes it must be received. Ex. A ¶ 8. What he asked the Jail for was a small wafer and a thimble-sized cup of wine. Ex. A ¶ 10. Whether grape juice would serve just as well is not a question this Court may reach. RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc-5(7)(A), and the Eighth Circuit, rejecting prison officials' argument that red willow bark could replace ceremonial tobacco, has held that an inquiry into what is or is not central to a particular religion "has no place in an RLUIPA analysis," *Weber*, 750 F.3d at 750; cf. *Levitan*, 281 F.3d at 1316, 1320 (rejecting, under the First Amendment, the premise that Catholic inmates' receipt of Communion wine was unprotected because it was not mandatory, notwithstanding the government's evidence that Communion could be received under the form of bread alone). An alternative that does not permit the religious exercise Mohr actually seeks is not a less restrictive means of regulating that exercise; it is the same prohibition under another name. See *Holt*, 574 U.S. at 361–62.

**D. The rule is underinclusive, and administrability concerns do not save it.**

The Jail permits pastoral visits and accommodates other inspected materials, while forbidding an inspected sacrament that poses no greater risk. Where a government fails to pursue its stated objectives "with respect to analogous nonreligious conduct," that under-inclusiveness "suggests that those interests could be achieved by narrower [rules] that burdened religion to a far lesser degree." *Holt*, 574 U.S. at 367 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).

Defendant anticipates the objection that the Jail lacks a chapel, chaplaincy staff, secure alcohol storage, and a procurement and accountability system, and that granting one request will oblige it to administer a program. The answer is that Defendant asks the Jail to administer nothing. The pastor brings the elements, the pastor administers them, and then the pastor takes the cup and other packaging away. The Jail need not purchase anything. The pastor and jail administrative staff can coordinate the details as substantially offered previously by Major Schott, but with sacramental wine. Defendant does not ask to hold or keep anything. He asks only to receive the elements from his pastor and to consume them reverentially. His pastor will take the cup and all packaging with him when he leaves. Ex. A ¶ 10; see Ex. B ¶¶ 4–5. The observance takes only a short period of time on a schedule the Jail sets. BOP's storage, procurement, and bin-card protocols exist because BOP administers a system-wide program for tens of thousands of inmates; they are not the measure of what a county jail must do to allow one pastor to administer the sacrament to one detainee. In all events, administrative inconvenience is not a compelling interest, and RLUIPA places the burden of proving the absence of alternatives on the government, not on the detainee. *Holt*, 574 U.S. at 364.

### E. Deference does not excuse the absence of any individualized justification.

Defendant does not ask the Court to disregard the expertise of jail administrators. *Cutter* instructs that RLUIPA be applied with "due deference to the experience and expertise of prison and jail administrators," 544 U.S. at 723, and *Bell v. Wolfish* counsels deference absent "substantial evidence in the record to indicate that the officials have exaggerated their response" to genuine security considerations, 441 U.S. 520, 548 (1979) (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)). But deference attaches to operational judgments supported by evidence, not to the reflexive application of a categorical rule. RLUIPA requires the government to satisfy the compelling-interest test through application of the challenged rule to "the particular claimant whose sincere exercise of religion is being substantially burdened." *Holt*, 574 U.S. at 363 (quoting *Hobby Lobby*, 573 U.S. at 726, in turn quoting *O Centro*, 546 U.S. at 430–31). Here no security assessment has been offered, no individualized concern is identified, and no explanation has been given for why the federal protocol, or a similar one, is unworkable.

## IV. The Equities and the Public Interest Favor the Narrow Relief Requested, and Defendant's Status as a Pretrial Detainee Reinforces the Claim.

Denial of the sacrament inflicts harm that no later remedy can repair. In the RLUIPA context the Supreme Court has recognized that where an inmate is prevented from engaging in protected religious exercise, the injury is "spiritual rather than pecuniary," and compensation cannot remedy it. *Ramirez*, 595 U.S. at 433–34 (prisoner denied audible prayer and religious touch at execution). The relief Defendant seeks is correspondingly narrow. He seeks a "tailored injunction" permitting one sacrament, once a week, under conditions the responding party may largely design. Id. Such relief would also satisfy the requirement, were the Prison Litigation Reform Act applicable, that prospective relief be narrowly drawn and the least intrusive means

necessary. See 18 U.S.C. § 3626(a)(1)(A); *Weber*, 750 F.3d at 753–54. Such relief vindicates Defendant's rights while leaving legitimate operations intact, and the public interest favors it, because "[b]y passing RLUIPA, Congress determined that prisoners . . . have a strong interest in avoiding substantial burdens on their religious exercise, even while confined." *Ramirez*, 595 U.S. at 433–34; see also *Cutter*, 544 U.S. at 716 (Congress documented "frivolous or arbitrary" barriers to institutionalized persons' religious exercise).

Defendant's status as a pretrial detainee reinforces the claim. He has not been convicted and "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. A categorical deprivation of a central religious practice, in this case one the federal system accommodates by written policy, is the kind of restriction that, if "not reasonably related to a legitimate goal—if it is arbitrary or purposeless," permits a court to infer "that the purpose of the governmental action is punishment," id. at 539, and no reasoned justification has been offered here. The Court need not reach the constitutional question, because RLUIPA and RFRA supply the stronger and dispositive standard. See *Cutter*, 544 U.S. at 720 (RLUIPA "alleviates exceptional government-created burdens on private religious exercise"). Defendant preserves his First Amendment claim in the alternative.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court:

(1) order the United States, through the USMS, either to secure from the Jail, or to redesignate Defendant to a facility that will provide, weekly receipt of Holy Communion, including the consecrated wine, from a Lutheran pastor, subject to reasonable inspection and security conditions;

(2) in the alternative, order the Jail and its officials to permit that accommodation;

(3) in the further alternative, grant leave to join the Sheriff of Ste. Genevieve County and the Jail Administrator, Lt. Andrew Johnson, in their official capacities, or to file a companion civil action;

(4) set this matter for hearing; and

(5) grant such further relief as is just.

A proposed order accompanies this motion.

Respectfully submitted,

JOHN C. SCHLEIFFARTH, P.C.

/s/ John C. Schleiffarth
John C. Schleiffarth, MO Bar No. 63222
120 S. Central Ave., Suite 1550
Clayton, Missouri 63105
T: (314) 561-9690
E: john@jcsattorney.com
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve all counsel of record. I further certify that I caused a copy to be served by certified mail on the following:

Gary Stolzer, Sheriff
Ste. Genevieve County Sheriff's Office / Detention Center
5 Basler Drive
Ste. Genevieve, MO 63670

Sue Wolk
County Clerk / Clerk of the County Commission

55 South Third Street, Room 2
Ste. Genevieve, MO 63670

/s/ John C. Schleiffarth